# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| MARY ALICE DAWSON,<br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br>    Defendant. | )<br>)<br>)<br>)    CAUSE NO.: 2:14-CV-245-PRC<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Mary Alice Dawson on July 16, 2014, and a Plaintiff's Brief in Support of Motion for Summary Judgment [DE 16], filed on December 9, 2014. Plaintiff requests that the February 20, 2013 decision of the Administrative Law Judge denying her claim for disability insurance benefits and widow's insurance benefits be reversed with an award of benefits or reversed and remanded for further proceedings. On March 31, 2015, the Commissioner filed a response, and Plaintiff filed a reply on April 14, 2015. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits on August 30, 2011, alleging an onset date of April 30, 2008. She subsequently filed an application for disabled widow's benefits on September 30, 2011. The claims were denied initially and upon reconsideration. Plaintiff timely requested a hearing, which was held on December 7, 2012. In attendance were Plaintiff, a non-attorney representative, and an impartial vocational expert. On February 20, 2013, Administrative Law Judge ("ALJ") George W. Reyes issued a written decision denying benefits, making the following findings:

1. It was previously found that the claimant is the unmarried widow of the deceased insured worker and has attained the age of 50. The claimant met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act.

2. The claimant meets the insured status requirements of the Social Security Act though December 31, 2013.

3. The claimant has not engaged in substantial gainful activity since April 30, 2008, the amended alleged onset date.

4. The claimant has the following severe impairments: arthritis of the spine; herniated disc; carpal tunnel syndrome.

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is unable to climb ladders, ropes, or scaffolds, but she can occasionally use ramps, stairs or stools, and occasionally balance, stoop, kneel, crouch or crawl. She should avoid concentrated exposure to work hazards such as unprotected heights or dangerous machinery. She is unable to work in a fast-paced production environment. She is capable of attending and concentrating in two-hour blocks of time throughout an eight-hour work day, with the normal breaks and lunch period. Finally, she is capable of taking public transportation to and from the work site.

7. The claimant has past relevant work as a lead supervisor, and assistant manager of a restaurant.

8. The claimant was born [in 1961] and was 46 years old, which is defined as a younger individual, age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age.

9. The claimant has at least a high school education and is able to communicate in English.

10. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills.

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

12. The claimant has not been under a disability, as defined in the Social Security Act, from April 30, 2008, through the date of this decision.

(AR 17-27).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment

for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

4

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is

not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [her] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**ANALYSIS**

In this appeal, Plaintiff argues that the ALJ erred (1) in formulating Plaintiff's RFC when he failed to consider Plaintiff's impairments in combination and improperly analyzed the medical evidence; (2) by failing to properly determine Plaintiff's credibility when he mischaracterized Plaintiff's daily activities and discounted her need for a cane based on flawed reasoning; and (3) in evaluating the medical opinion of Plaintiff's treating physician when he failed to properly employ the checklist of factors found in 20 C.F.R. § 404.1527(c). The Court considers each in turn.

**A. Weight to Treating Physician**

Remand is required because the ALJ failed to properly weigh the opinion of Plaintiff's treating physician, Dr. Bayne Spotwood. An ALJ must give the medical opinion of a treating doctor controlling weight as long as the

> treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record . . . . When we do not give the treating source's opinion

6

> controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons . . . for the weight we give to your treating source's opinion.

20 C.F.R. § 404.1527(c)(2); *see also Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008); *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); SSR 96-8p; SSR 96-2p, 1996 WL 374188 (Jul. 2, 1996). In other words, the ALJ must give a treating physician's opinion controlling weight if (1) the opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques" and (2) it is "not inconsistent" with substantial evidence of record. *Schaaf*, 602 F.3d at 875; *see also Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013).

The factors listed in paragraphs (c)(2)(i) through (c)(6) are the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors such as the familiarity of a medical source with the case. 20 C.F.R. § 404.1527(c). "[I]f the treating source's opinion passes muster under [§ 404.1527(c)(2)], then there is no basis on which the administrative law judge, who is not a physician, could refuse to accept it." *Punzio v. Astrue*, 630 F.3d 704, 713 (7th Cir. 2011) (internal quotation marks omitted) (quoting *Hofslien*, 439 F.3d at 376). An ALJ is entitled to discount the medical opinion of a treating physician if it is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as the ALJ gives good reasons. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Schaaf*, 602 F.3d at 875; *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004).

Plaintiff was treated by Dr. Benjamin Anigbo from March 2008 through September 2011. In January 2012, Plaintiff began to see Dr. Bayne Spotwood, M.D. when she qualified for Medicaid.

On October 4, 2012, Dr. Spotwood completed a functional capacity assessment and related documents. *See* (AR 512-20). As for the Listing analysis, Dr. Spotwood indicated that Plaintiff had an impairment that affected her lumbar spine, but did not result in nerve root compression, and that she had muscle spasm and limitation of motion of the spine despite prescribed therapy. Dr. Spotwood indicated no atrophy, sensory changes, no reflex abnormalities, and no circulatory deficits. Plaintiff did not have positive straight leg raising in either a seated or supine position. Dr. Spotwood noted that Plaintiff had right hip pain and paraspinal tenderness in the right lumbosacral area. Lumbosacral flexion was 60 degrees. Plaintiff could walk on her heels and toes but could not squat or rise from a squat due to pain in her thighs. Plaintiff had an antalgic gait with right-sided weakness. Dr. Spotwood noted signs of radiculopathy with pain on the right side from the thigh to the calf. As for muscle strength, Dr. Spotwood assessed -5/5 for the left lower extremity and 3-4/5 for the right lower extremity. Dr. Spotwood noted that Plaintiff had not had surgery but continued to be symptomatic and that future surgery was not planned. Plaintiff had been treated with non-steroidal anti-inflammatories, home physical therapy, and heat. Dr. Spotwood opined that Plaintiff would be absent from work more than two days a month. Dr. Spotwood did not indicate whether the limitations had existed since the alleged onset date of April 30, 2008, but indicated that they had existed since January 2012.

     In assessing her residual functional capacity, Dr. Spotwood indicated that Plaintiff could sit for four hours a day and stand and/or walk for one hour a day. She could lift and carry up to twenty pounds occasionally. Dr. Spotwood found that Plaintiff could never climb, kneel, crouch, stoop, balance, or crawl because of pain in the lumbosacral area, muscle spasm, and right hip pain. He opined that Plaintiff cannot push/pull due to lumbar back pain and right hip pain and that she should

not work at heights because she cannot balance well. Dr. Spotwood did not know if these limitations had existed on the alleged onset date of April 30, 2008, but said they had existed since January 2012.

On the Exertional Limitation Questionnaire completed the same date, Dr. Spotwood chose the most restrictive category, checking the line for "Patient is incapable of sedentary work on a sustained and full-time basis." (AR 518). On the Pain Questionnaire, Dr. Spotwood listed Plaintiff's pain as "moderate," which is described as "an impairment which affects but does not preclude ability to function." (AR 519). Dr. Spotwood also checked the box indicating that Plaintiff's complaints of pain are consistent with his objective findings. *Id*. Dr. Spotwood indicated that Plaintiff's pain would interfere occasionally (10-33% of the time) with her ability to maintain attention and concentration to sufficiently complete tasks in an efficient manner. He again indicated that she would be absent more than two days a month. On the Rest Questionnaire, Dr. Spotwood indicated that Plaintiff needed "complete freedom to rest frequently without restriction." (AR 520). If the ALJ had fully credited Dr. Spotwood's opinion, Plaintiff would be incapable of sedentary work.

In his decision, the ALJ found Dr. Spotwood's opinion "not compelling." (AR 22). The ALJ reasoned that Dr. Spotwood indicated in his opinion that Plaintiff was able to walk on her heels and toes, noting that no cane was referenced, had no muscle atrophy, no diagnostic testing, 5/5 strength, and no surgeries were performed or planned for her pain. The ALJ noted that she was treated with NSAIDS and home physical therapy, with no narcotic pain medications. Finally, the ALJ noted that the opinion was only for the period beginning January 2012 and did not go back to the alleged onset date.

First, the only favorable portion of Dr. Spotwood's findings acknowledged by the ALJ was that Plaintiff exhibited an antalgic gait. Otherwise, the ALJ cited only those findings that supported

9

the RFC. As for the antalgic gait, the ALJ does not discuss why the fact that Plaintiff walks with a limp does not support her complaints of right knee and hip pain and back pain or why it does not support Dr. Spotwood's opinion. The ALJ improperly recited 5/5 strength when Dr. Spotwood found -5/5 on the left lower extremity and 3-4/5 for the right lower extremity. The ALJ does not cite the favorable findings that Plaintiff had lumbar spine pain, muscle spasms, limitations in motion, inability to squat, evidence of radiculopathy, and reduced muscle strength on her right side. Nor does the ALJ note that Dr. Spotwood specifically found that his findings were consistent with Plaintiff's complaints. The ALJ does not identify any inconsistency between Dr. Spotwood's opinion and his treatment notes for the previous ten months. Absent from the discussion of the weight given to Dr. Spotwood's opinion is the identification of any compelling evidence that contradicts Dr. Spotwood's opinion.

Second, the fact that Dr. Spotwood's opinion was only for the period of January 2012 through October 2012 is logical given that he did not start treating Plaintiff until January 2012. Plaintiff reported right leg pain in September 2011 to her prior treating physician, Dr. Anigbo. Although the ALJ noted this report to Dr. Anigbo in his recitation of the evidence, he misstated the report. The ALJ wrote that Plaintiff had reported "right lower extremity pain that hurts *mostly* at night rather than when she is walking," (AR 21), whereas the treatment record provides that Plaintiff reported "right leg hurt, duration one month, pain level 7, states it hurts *more* at night than when walking," (AR 361). In addition, the ALJ did not discuss this prior record in the context of weighing Dr. Spotwood's opinion. Nor does the fact that Dr. Spotwood's opinion pertain to the ten-month treatment period lessen the weight of his opinion for that treatment period. Although Plaintiff's

10

alleged onset date is April 2008, the ALJ found that she meets the insured status requirements through December 3, 2013.

Third, although the ALJ addressed some of the checklist factors–the length of treatment and the types of tests performed, the ALJ did not consider the remaining checklist factors of the nature and extent of the treatment relationship, the physician's specialty, and the consistency and support for the physician's opinion. 20 C.F.R. § 404.1527(d)(2). The Seventh Circuit Court of Appeals has repeatedly held that the factors must be addressed by the ALJ. *See Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011); *Campbell*, 627 F.3d at 308-09; *Larsen v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). However, an ALJ "may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability." *Schreiber v. Colvin*, 519 Fed. App'x 951, 957-58 (7th Cir. 2013) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (internal quotation marks and citation omitted)). The ALJ does not identify a contradictory opinion, any internal inconsistencies within Dr. Spotwood's opinion, or any inconsistencies between Dr. Spotwood's opinion and his treatment records.

Finally, the ALJ does not specifically address Dr. Spotwood's RFC findings listed above or the findings that Plaintiff is incapable of even sedentary work, that Plaintiff's pain would interfere with her ability to maintain attention, concentration, and ability to complete tasks approximately one third of the day, or that Plaintiff would miss more than two days of work a month. The Court recognizes that the determination of what a claimant can do despite her limitations is a decision committed to the exclusive discretion of the ALJ. *Bates*, 736 F.3d at 1101 (citing 20 C.F.R. §

404.1545(a)(1) (defining RFC); 20 C.F.R. § 404.1527(d) (reserving the final responsibility for determining the RFC to the commissioner)). Nevertheless, the RFC opinion of treating physicians is routinely solicited on forms provided by the administrative agency. The forms are necessarily filled out by the treating physician to provide guidance to the ALJ in making the ultimate RFC determination. For the ALJ to give the opinion less weight, he must cite good reasons supported by the record. Remand is appropriate for proper consideration of the Dr. Spotwood's opinion.

### B. Residual Functional Capacity

Plaintiff argues that the ALJ failed to properly determine Plaintiff's RFC by failing to properly assess her anemia, to consider the extent of her arthritis, to discuss her obesity, and to consider her impairments in combination. Although Plaintiff has not shown that the ALJ erred in considering her anemia, the remaining errors in the RFC determination require remand. This is especially important in this case because Plaintiff was over fifty years old at the time of her hearing, and, thus, if she was incapable of performing "light" work, the regulations mandate a finding of "disabled." *See* 20 C.F.R. § 404.1520(a)(4)(v).

First, Plaintiff argues that the ALJ erred by finding that Plaintiff's anemia resolved following her hysterectomy in 2012. (AR 19). Plaintiff had a hysterectomy in February 2012 after a diagnosis of uterine fibroids with heavy bleeding for the prior year. She had a history of anemia as well. Plaintiff notes that, although there are no additional reports of vaginal bleeding after her hysterectomy, anemia was still listed as a condition in June 2012 by Dr. Wood. However, Dr. Wood is her orthopedist, and anemia on that report is listed under "past medical history." (AR 521). Plaintiff has not identified any treatment records showing a diagnosis of anemia subsequent to her hysterectomy.

12

Next, Plaintiff contends that the ALJ failed to properly evaluate the extent of her arthritis. The ALJ listed Plaintiff's arthritis of the lower spine as a severe impairment but did not explain why he did not consider Plaintiff's joint pain to be severe. Plaintiff testified that she had arthritis in 70% of her body with swelling in her right knee and hip. (AR 42). The consultative examiner included an impression of history of arthritis in both knees since 2008. In addition, Plaintiff's doctors noted arthritis, degenerative changes, and narrowing in her knees and hips. *See* (AR 425, 427, 506, 525, 529). On January 3, 2012, Plaintiff had an x-ray of both hips with a diagnosis of pain in her lower leg, pelvic region and thigh, and forearm. (AR 425). The impression was mild narrowing of the hip joints. (AR 426). She also had an x-ray of the left knee. (AR 427). The impression was mild degenerative changes with narrowing of the medial compartment of the knee joint but the articulating surfaces were otherwise smooth and with no other significant osseous abnormality detected. (AR 428). In his treatment notes from October 3, 2012, Dr. Wood noted that Plaintiff reported that her right hip pain was beginning to worsen and that she had difficulty walking. (AR 525). He also noted that Plaintiff used a cane to walk and had painful arthritis of the knees. *Id*. On examination, Dr. Wood noted that Plaintiff's right hip was slightly tender in the groin region with any attempted range of motion and that she had limited internal and external rotation. He also noted that the x-rays showed early moderate arthritis of the right hip. He did not feel that she needed surgery at that time, although she might be a candidate in the future, and they agreed to proceed with conservative care. *Id*. The ALJ offers no basis for not finding her arthritis and degenerative changes to be severe or to cause functional limitations.

The ALJ further erred by failing to discuss Plaintiff's obesity as a contributing factor to Plaintiff's pain and her ability to function. Plaintiff's BMI was regularly at 38-39, and in July 2012,

13

her doctor noted morbid obesity. (AR 480). Under Social Security Ruling 02-1p, an ALJ must specifically address the effect of obesity on a claimant's limitations. *See* SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002). The consideration of obesity should be an integral factor underlying the construction of the RFC. *Id*. at *6. The ALJ must consider whether obesity causes any functional limitations and explain that conclusion: "As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." *Id*. at *6-7.

> The Ruling provides some guidance on how obesity is factored into the RFC determination:
>
> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.
>
> The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.

*Id*. at *6. Consistent with Ruling 02-1p, the Seventh Circuit Court of Appeals requires that the ALJ "factor in obesity when determining the aggregate impact of an applicant's impairments." *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012) (citing *Martinez*, 630 F.3d at 698-99; *Clifford*, 227 F.3d at 873); *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004) (finding that the ALJ erred by not explaining the consideration given to the claimant's obesity). The ALJ's failure to discuss Plaintiff's obesity and its effects on her impairments requirement remand.

In a similar vein, on remand, the ALJ is directed to consider Plaintiff's impairments in combination, especially in light of her obesity. *See Clifford*, 227 F.3d at 873; *Terry*, 580 F.3d at 477; *Golembiewski*, 322 F.3d at 918.

Finally, the Court is troubled by the ALJ's unsupported speculation:

> Two common side effects of prolonged and/or chronic pervasive pain are weight loss and diffuse muscle wasting or atrophy. There is no record of claimant having lost weight since the alleged onset date. There is also no record regarding diffuse muscle atrophy or muscle wasting. It can be inferred that, although the claimant undoubtedly experiences some degree of pain, the pain has apparently not altered the use of her muscles and joints to the extent that [it] has resulted in diffuse muscle atrophy.

(AR 25). Normally reluctant to describe an ALJ as "playing doctor," the Court cannot do otherwise in this instance. *See Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) (holding that the ALJ "succumbed to the temptation to play doctor" by making a medical prognosis no doctor opined to); *see also Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). The ALJ made an independent medical determination in discounting the severity of Plaintiff's alleged pain without citation to any medical evidence, doctor's opinion, or authority. There is no indication in the record that Plaintiff should have experienced weight loss or diffuse muscle wasting. Nor is there any support for the ALJ's reasoning that the absence of both side effects negates the level of pain Plaintiff is experiencing. As noted earlier, Dr. Spotwood indicated that Plaintiff's complaints of pain were consistent with his objective findings. (AR 519). And, nowhere did Dr. Spotwood indicate that Plaintiff was a malingerer. The ALJ's unsupported speculation is an error.

### C. Credibility

Plaintiff argues that the ALJ erred by relying on boilerplate language and flawed reasoning. In making a disability determination, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20

C.F.R. § 404.1529(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c)(3). "Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (internal quotation marks omitted) (quoting *Skarbek*, 390 F.3d at 504-05); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry*, 580 F.3d at 477); SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

In this case, the ALJ's analysis of Plaintiff's activities of daily living and her use of a cane are flawed. First, the ALJ used Plaintiff's activities of daily living to discredit her, writing: "The claimant acknowledges, in her written statements and/or oral testimony that she is able to cook, clean, do laundry, wash dishes, shop, care for personal needs, take walks, drive an automobile, visit

16

friends/relatives, talk on the phone, use the computer, watch television, and [read]." (AR 25). Thus, the ALJ "inferred that the claimant has maintained a somewhat normal level of activity and interaction." *Id*. The ALJ reasoned that "the physical and mental requirements of these household tasks and social functioning are consistent with a significant degree of overall functioning." *Id*.

Despite the ALJ's qualification in this last sentence, the Seventh Circuit Court of Appeals has repeatedly cautioned ALJs against relying on daily activities as proof that a claimant can work full-time, eight hours a day, forty hours a week. *See Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006). Plaintiff's activities of watching television, reading, using a computer, and using a telephone are largely sedentary in nature; the ALJ fails to explain how these sedentary activities are inconsistent with Plaintiff's allegations of pain or how they support an RFC for a limited range of light work.

Moreover, the ALJ mischaracterizes Plaintiff's description of her daily activities. She testified that she can care for herself but that she requires extra time and support; she has difficulty getting in and out of the bathtub. Plaintiff only does laundry one day per week, cleans her bedroom only 30-60 minutes twice a week, and avoids sitting in her living room to minimize the need to clean it. She stated that she can prepare simple meals but does not do much cooking to avoid standing. She shops only one time a month. She has reduced her social activities because of the pain. Although Plaintiff stated she does the activities the ALJ listed, she does them at a significantly reduced level not acknowledged by the ALJ.

Second, the ALJ's treatment of Plaintiff's use of a cane incorrectly focuses on the lack of a prescription, which is not required for the use of a cane. *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010); *Terry*, 580 F.3d at 478. The ALJ extensively examines the record regarding Plaintiff's

use of a cane in order to discredit her despite the notation in her treating records as well as the consultative examiner's report that she was using a cane. Plaintiff is obese, suffered a herniated disc, and has arthritis in both knees and her right hip. Her use of a cane and her testimony that it helps her walk is not inconsistent with her impairments. On remand, if Plaintiff's use of a cane is relied on in assessing her credibility, the ALJ should seek additional clarification from her treating physician on the necessity and effectiveness of a cane.

### D. Request for an Award of Benefits

An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Based on the discussion above, remand, not an immediate award of benefits, is required.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in the Plaintiff's Brief in Support of Motion for Summary Judgment [DE 16], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DENIES** Plaintiff's request to award benefits.

So ORDERED this 21st day of September, 2015.

s/ Paul R. Cherry  
MAGISTRATE JUDGE PAUL R. CHERRY  
UNITED STATES DISTRICT COURT